## HARPER et al. v. TEMPLE LUMBER CO. et al.   (No. 1044.) *

(Court of Civil Appeals of Texas.   Beaumont. Feb. 16, 1924.   Rehearing Denied Feb. 28, 1924.)

1. **Trespass to try title ⚖➡6(1)—Plaintiff must prevail, if at all, upon strength of own title.**

Plaintiffs' case in an action of trespass to try title must stand or fall on the strength of their title.

2. **Boundaries ⚖➡37(4)—Evidence held to sustain finding as to boundary.**

Evidence held to sustain finding that meander line of river constituted boundary, rather than line called for by field notes.

3. **Boundaries ⚖➡3(8) — Recited acreage not controlling in construction of field notes.**

The fact that a tract of land, referred to in conveyances relating thereto as containing 500 acres, if laid out according to the field notes would contain 1,317 acres, is not controlling of its boundary; quantity being of small dignity in construing field notes.

4. **Boundaries ⚖➡3(4) —Call for meander line controls call for course, distance, and quantity.**

The calls for course and distance and quantity must yield to a call for the meander line of a river.

5. **Appeal and error ⚖➡1058(2)—In boundary suit exclusion of field notes, if error, held harmless.**

In an action to determine a boundary, refusal to admit particular field notes held, if error, harmless, where full testimony as to such notes was subsequently admitted, and the witness fully cross-examined concerning same without objection.

Appeal from District Court, Sabine County; V. H. Stark, Judge.

Action by the Temple Lumber Company and others against Lewis Harper and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Kennerly, Lee & Hill, of Houston, Adams, King & Adams, of Hemphill, and A. M. Huffman, of Beaumont, for appellants.

Goodrich, Davis & McWilliams, of Hemphill, for appellees.

O'QUINN, J. This is a suit in trespass to try title, involving a portion of the John Moore league of land in Sabine county, Tex. Appellees were plaintiffs below, and appellants were defendants.

The Moore league is situated in the eastern portion of Sabine county, and by the verdict of the jury is bounded on the east by the Sabine river. As this finding is not assailed, at least no serious contention is here urged against said finding, it is not necessary to review the evidence on which it was made. The beginning corner of the Moore league is located on the west bank of the river. At that point, the river bends abruptly to the east and runs in that general direction for a long distance, and then it turns south for a much shorter distance, then west, and at a point almost directly south of the beginning corner, turns south in almost its original course above the beginning corner of the Moore league. The "cutoff" or "slough" testified to by the witnesses is that through which the "overflow" water escapes from point "A" on the north to the point "B" on the south, leaving the river at the abrupt turn on the north and intersecting it again at the turn on the south; the line connecting these two points being designated in the testimony and in the charge of the court as line "AB." The bend in the river above described is known in the record as "Godkin's Bend" and contains about 800 acres of land, which is the land in controversy.

The league was titled to John Moore, September 30, 1835.

[1] Appellants have only such title as can be presumed from their prior possession. Appellees attempted to deraign a record title from the sovereignty of the soil. As appellees were plaintiffs, their case must stand or fall on the strength of their record title.

On December 3, 1848, Mrs. Missouri M. Fowler was the owner of all the Moore league, including the land in controversy, except 1,107 acres off of the south side known as the American Lumber Company tract. On said date, Mrs. Fowler conveyed 500 acres of the land owned by her to Dr. S. P. Willson, under the following description:

"Beginning at the northeast corner of John Moore's headright league of land and running so as to contain five hundred acres of land in a square in said northeast corner, said land more fully described in the title issued by, etc."

On November 28, 1851, the holders of the Willson title entered upon the league and at-

tempted to survey out for themselves their 500 acres of land, which they did under the following field notes:

"Beginning at the northeast corner of John Moore league, the same being the southeast corner of a survey made for Jesse Low, 1st corner, a stake on the bank of the Sabine river, from which a water oak marked (J. L.) bears west $5^8/_{10}$ varas, and a holly marked (J. L.) bears N. 70 W. $9^2/_{15}$ varas.

"Thence S. 69 deg. W. 2,150 varas on John Moore's north boundary 2d corner on a hickory 3 in. dia. marked (X) bears S. 13 W. 4 vrs. and a hickory 5 in. in dia. marked (X) bears S. 35 E. 5 vrs.

"Thence S. 21 E. 1,900 vrs. to 3d corner on a white oak 10 in. in dia. marked (X) bears N. 83 E. 5 vrs. and a white oak 12 in. in dia. marked (X) bears N. 23 W. 6 vrs.

"Thence N. 69 E. 1,100 vrs. to 4th corner on a stooping willow 65 in. in dia. on the bank of the Sabine river, from which a forked elm 4 in. in dia. marked (X) bears S. 38 W. 3 vrs. a water ash (oak) 5 in. in dia. marked (X) bears N. 87 W. 3 vrs.

"Thence up the river with its meanders as follows: North 720 vrs. N. 7 E. 1,440 vrs. to the place of beginning, this survey to contain 500 acres of land."

These field notes are what is referred to in the record as the "Burroughs" field notes. We find that in making this survey, they began at the original beginning corner of the Moore league, and that their north, west, and south lines, and the corners thereof, are located on the ground in accordance with the calls as given. The balance of Mrs. Fowler's interest in the league passed by mesne conveyances to F. S. Bartram, who, on March 21, 1901, conveyed to J. O. Toole 1,890 acres of the league under the following description:

"One certain tract or parcel of land not to exceed eighteen hundred and ninety (1,890) acres, the same being a part of a league of land originally granted to John Moore by grant dated September 30, 1835, situated in Sabine Co. in the state of Texas, lying on or near the Sabine river, it being a portion of twenty-eight hundred and twenty-one (2,821) acres, which lands were heretofore conveyed to me, said Ferdinand S. Bartram, by two deeds or conveyances as follows, to wit: * * *

"Said tract is to be surveyed from the west bank of the Sabine river, conforming thereto and extending westward between two tracts of land in said league, designated as follows:

"The north tract, consisting of five hundred (500) acres only, is to be surveyed out of the northeast portion of said league in the form of a square as nearly as practicable.

"Said tract is the one deeded by Mrs. Missouri M. Fowler to S. P. Willson December 3, 1848, and recorded in Book F. pages 342 and 343, Records of Sabine Co., December 11, 1851.

"The south tract is one-quarter (¼) of a league, meaning eleven hundred and seven (1107) acres, which is hereby reserved out of the southern portion of said Moore league, extending from the river, westward entirely across said league, of sufficient width from north to south to comprise the said eleven hundred and seven (1,107) acres.

"The said eighteen hundred and ninety (1,-890) acres intended to be conveyed are situated between the two within-described tracts, commencing on the west bank of Sabine river; conforming thereto, and extending westward sufficiently to include the said eighteen hundred and ninety acres."

The Willson title passed to appellees. Toole conveyed his interest in the league to appellees under the following description:

"All that certain tract or parcel of land lying and being situated in Sabine county, Texas, being a portion of the John Moore league survey on Sabine river, and described by metes and bounds as follows, to wit:

"Beginning at the S. E. corner of the Jesse Low survey on the west bank of Sabine river,

"Thence down the river with its meanders as follows, to wit: S. 54 E. 288 vrs. N. 85 E. 541 vrs. N. 76¾ E. 370 vrs. to a pine knot on the south bank of Sabine river for corner, a holly 9 in. in dia. mkd. X J O T brs. N. 75 W. 5 vrs., a holly 6 in. mkd. X brs. N. 54½ E. 4 2.5 vrs.

"Thence south at 100 vrs. crossed a small branch runs east course, at 513 vrs. crossed Godwin's Ferry Road, at 680 vrs. crossed a branch, runs east, at 750 vrs. crossed said branch 2d time, at 780 vrs. crosses said branch 3d time, at 1,400 vrs. set pine knot on Sabine river, a pine 15 in. mkd. X J O T brs. S. 80 W. 2⅕ vrs. a birch 20 in. mkd. X brs. S. 20 E. 5 vrs.

"Thence down said river with its meanders as follows, to wit: S. 72 W. 839 vrs. S. 21 W. 227 vrs. S. 4¾ vrs. stake on bank of river in the Dillion Shoals, an elm 10 in. mkd. X brs. N. 21 W. 1⅗ vrs. and a sweet gum 15 in. mkd. X brs. S. 24 E. 8 vrs. (old corner).

"Thence S. 68½ W. on an old marked line at 503 vrs. crossed a branch, runs south, at 860 vrs. crosses branch, runs S. E., at 1,240 vrs. crossed branch, runs S., at 1,697 vrs. crossed small creek, runs south, at 2,220 vrs. crossed Blackman creek, continuing same course crossing said creek a great many times; at 3,068 vrs. left south prong of said Blackman creek, at 3,100 vrs. an old corner in the west boundary line of said John Moore league, a pine knot, a pen oak 9 in. mkd.. X brs. N. 69 E. 5 vrs., a holly 8 in. mkd. X J O T brs. N. 2 W. 4⅖ vrs., a holly 5 in. mkd. X brs. N. 34 W. ⅘ vrs. a maple 12 in. mkd. X brs. N. 41 W. 3⅖ vrs. a pin oak 4 in. mkd. X brs. N. 75 W. 5 vrs., a beech 16 in. mkd. X brs. S. 52 W. 8 vrs. an iron wood 2 in. mkd. X brs. S. 27 W. 5⅖ vrs. an iron wood 2½ in. brs. S. 27 W. 1⅕ vrs.

"Thence N. 20¾ W. with the west boundary line of said John Moore league at 235 varas crossed the north prong of Blackman creek, runs east, at 1,140 vrs. crossed branch runs S. W. (at 1,120 vrs. on this line crossed old road leading from the Blackman old place to the Wiley Low old place), at 2,200 vrs., the northwest corner of the John Moore league.

"Thence N. 69 E. with the north boundary line of said Moore league at 350 vrs. crossed branch, runs N. at 540 vrs. crossed said branch, runs N. E., at 730 vrs. branch runs N., at 870 vrs. crossed said Godwin's Ferry (Road)

at 1,150 vrs. crossed Godwin's Ferry Road 2d time, at 1,230 vrs. crossed Godwin's Ferry Road 3d time, at 2,493 vrs. crossed Godwin's Ferry Road leading out by the Wiley Low old place, at 3,683 vrs., the place of beginning."

As appellants locate the Willson, as actually surveyed by the hereinbefore given (Burroughs) field notes, they place the east line thereof by extending same from the southeast corner of said Willson field notes on the river in a northerly direction to the place of beginning, this being almost a straight line connecting the bend of the river at the Moore beginning corner with the bend in the river where it turns south after making the circle around Godwin's Bend. This location of the Willson tract leaves lying east of it all of the land in Godkin's Bend, which, as stated above, contains about 800 acres and is the land in controversy. After Toole bought from Bartram, a dispute arose between him (Toole) and the holders of the Willson title, the Weathersbys, as to the location of their 500 acres on the ground. He insisted that the Willson tract should be located in the northeastern portion of the league on the eastern end of Godkin's Bend, and that the description of said 500 acres of land as given in Mrs. Fowler's deed to Willson so located it. The Weathersbys sued Toole and others for the Willson tract, in their petition giving the boundaries, calling for the east line to be: "Thence up the river with its meanders to the beginning." This suit was never tried, and this difference was never adjusted; but when Toole sold his interest to appellees, by his description to them of the land, he was selling, he excluded the 500 acres in the eastern end of Godkin's Bend, which he conceded to the holders of the Willson title, and his deed to appellees did not include the 500 acres in the extreme end of Godkin's Bend, but his field notes do include all the land which appellants insist was surveyed out and appropriated by the holders of the Willson title in their efforts to locate their land upon the ground, under the description in the deed from Mrs. Fowler to Willson.

It is the contention of appellants that appellees have shown no title to the 500 acres in Godkin's Bend, because it was not included in their deed from Toole, nor in the field notes to the Willson tract as it was conveyed to them, and that therefore judgment should have been for appellants, both on the theory of prior possession and that of an outstanding title with which appellees had not connected themselves.

If appellants are correct in their location of the Willson tract and of its eastern line, as surveyed by Burroughs in 1851, then appellees have no title under Mrs. Fowler to the 500 acres in Godkin's Bend excluded by the Toole field notes, because this 500 acres would not be included in any of their deeds

under Mrs. Fowler's chain of title. We further find that appellees hold a regular chain of title from the sovereignty of the soil through Mrs. Fowler to all the land covered by the Toole field notes and by their title to the Willson tract. We further find that the Willson tract as actually surveyed on the ground, according to appellants' contention, contains 622 acres as against its call for only 500 acres.

Only two questions were submitted to the jury, to wit:

Question No. 1:

"Is the east boundary line of the John Moore league the line AB (as claimed by defendants Lewis and Aver Harper), or is it the Sabine river (as claimed by plaintiffs Temple Lumber Company et al.)?"

The jury answered: "The Sabine river." We have above referred to this question and the jury's answer thereto. No further discussion of same is necessary.

Question No. 2:

"Is the east line of the Willson or Weathersby tract of land the line AB (as claimed by defendants Lewis and Aver Harper), or is it the Sabine river (as claimed by plaintiffs Temple Lumber Company et al.)?"

The jury answered: "The Sabine river."

[2] If the jury's verdict in answering this question has support in the evidence, the judgment should be affirmed. We think it is fully supported, for the following reasons:

1. For the purposes of this opinion, we concede, as stated above, that the beginning corner of the Willson tract is located on the ground as contended for by appellants, and that all the other calls of the field notes as made and run by Burroughs in 1851 are located on the ground, as contended for by appellants, except the calls for the east line, which are as follows:

"Thence up the river with its meanders as follows: North 720 varas, N. 7 E. 1,440 vrs. to the place of beginning."

[3] As applied to the location on the ground, the calls just given do not locate the east line in accordance with appellants' contention, if course and distance are given effect, in that the calls for course and distance would strike the river 427 varas east of the beginning corner. The Burroughs field notes call for the east line to run from the southeast corner on the river, thence up the river with its meanders north 720 varas, N. 7 E. 1,440 varas, to the place of beginning. It is undisputed that to run from the southeast corner of the river north 720 varas and N. 7 E. 1,440 varas will not follow the river, but will go almost at right angles away from the river. Up the river at this point (B) would lead almost due east, and the calls given would not comply with the

call for the river. All the witnesses who testified to following the calls north 720 varas and N. 7 E. 1,440 varas say there is no line along this call, and it is shown that they will not connect with the beginning corner as called for, but will hit the river 427 varas east of that point. But, if course and distance must yield to the call for the river with its meanders, and if the eastern line be extended to the beginning corner, as appellees contend it should be, by following the meanders of the river, then the Willson tract will be made to contain about 1,317 acres, instead of 500 acres, as called for. There is an irreconcilable conflict between the calls for course and distance and the call for the river. If we give effect to the call for the river on the theory that it is a call for a natural object, and should prevail over the call for course and distance, then the verdict of the jury is fully supported, and the Willson title, as appellees hold it, will include all of the land in controversy, and under that chain of title appellees have title to the land in controversy. Manifestly, this theory of the case would include in the Willson survey about 1,317 acres of land, while the title calls for only 500 acres; but this fact should not be controlling, because quantity is of small dignity in construing field notes, and again, under appellant's contention, it appears that the field notes contain 622 acres.

In aid of the jury's verdict making the river the east boundary of the Willson tract, it appears without controversy that for many years there was a confusion as to the location on the ground of the east boundary of the Moore league, occasioned by the great bend in the river above described. It appears that the league was first surveyed by one Sydney O. Pennington, his report being as follows:

"Field notes of a survey of one sitio of land made for John Moore in Zavalla's Grant By order of the Commissioner Jorge Anto. Nixon, dated May 28, 1835, No. 397. Beginning at a post and mound the N. E. corner of Gabriel L. Bowland's survey from which a cypress 30 in. diamt. bears S. 40 E. 3.2 v. dist. a sweet gum 60 in. diamt. bears S. 50 E. 8.2 v.

"Thence up the river with its meanders N. 30 E. 280 varas, N. 70 E. 700 v. N. 14 E. 575 v. N. 40 W. 1,000 v. N. 10 E. 1,700 v. north 720 v. N. 7 E. 1,440 v. Set post, made mound for 2d corner from which a sweet gum 24 in. diamt. bears N. 75 E. 2.8 v. red oak 65 in. diamt. bears N. 20 E. 7.2 v.

"Thence S. 69 W. to Jas. Conley's corner from which a sweet gum 45 in. diamt. bears N. 65 W. 7 v. & an ash 30 in. diamt. bears S. 24 E. 22.4 v.

"Thence with sd. Conley's line S. 21 E. crossed creek 8 v. wide course S. E. Set post, made mound 4th corner from which a pine, 12 in. diamt. bears S. 64 S. 1.2 v. pine 16 in. diamt. bears south 7 v.

"Thence with G. L. Bowland's line N. 69 E. to the beginning. Six labors of the above-described sitio is considered arable land And the residue grazing Land.

"Surveyed Sept. 8th, 1835.

"By Sydney O. Pennington, Surveyor.

"(Rubric.)"

These are what is known as the "English" field notes referred to in the record. These field notes were evidently not satisfactory, for Commissioner Nixon ordered Arthur Henrie, Surveyor General, to resurvey said league, which was done; his report being as follows:

"Mr. Commissioner: The land surveyed to Colonist John Moore is situated on the edge of Sabine river, north of Neighbor G. L. Bowland's survey. The 1st land mark was formed there, raising a mound of earth around a stake, from which a gum 24 inches bears north 75 east $2^8/_{10}$ varas and a red oak 65 inches in diameter bears north 20 east $7^2/_{10}$ varas distant.

"Thence south 69 west $6307^2/_{10}$ varas were measured and 2d corner was formed by raising a mound of earth around a stake; from which a sweet gum 45 inches in diameter bears north 65 west 7 varas and an ash 30 inches in diameter bears south 24 east $22^4/_{10}$ varas distant.

"Thence south 21 east 5,000 varas were measured and 3d corner was formed by raising a mound of earth around a stake; from which a pine 12 inches bears south 64 east $1^2/_{10}$ varas and a pine 16 inches bears south 7 varas distant.

"Thence north 69 east 3,287 varas were measured and 4th corner was formed on the northeast one of G. L. Bowland's survey on the bank of the Sabine river, from which, ascending the Sabine river along its various courses till arriving at the corner where this survey was begun and completing the league of land, which you ordered me to have surveyed. Six labors of said land belong to the class of arable land and the remaining nineteen to that of pasture land, its configuration being that which, in duplicate, I inclose you.

"Nacogdoches, Sept. 30, 1835.

"Arthur Henrie, Surveyor.

"(Rubric.)"

The "configuration" (map or plat) referred to as attached to the field notes of the survey showed the east line to be the Sabine river. This survey is delineated on the official map as follows:

"Resurveyed and field notes corrected Sept. 30, 1835, by Arthur Henrie, Surveyor General, for the state of Coahuila and Texas."

It will be observed that the calls, bearing trees, etc., in the Pennington field notes and those in the Henrie are identical except that of the east line. Pennington calls to run from the northeast corner of the Bowland survey on the Sabine river, thence up the river with its meanders, giving several courses and distances, among them being north 720 varas and north 7 E. 1,440 varas to what is the beginning corner of the Henrie field notes. This east line as called for

by Pennington is undoubtedly the Sabine river with its meanders. Henrie also calls to run from the Bowland northeast corner on the river "up the river along its various courses till arriving at the corner where this survey was begun," not setting forth any of the courses or distances of the meanders of the river. The league was titled upon the Henrie field notes; hence it is undisputed that the Sabine river is the east boundary of the league.

The Willson 500-acre tract in the deed from Mrs. Fowler to Willson called for it to be in the northeast corner of the league in the shape of a square, and later, in 1851, as above stated, those holding under this description went on the ground and ran out what appellants contend is the true location of the 500 acres. This is called the Burroughs survey. Previous to the survey by Burroughs, this was a wild and uninhabited country, and evidently little of its topography was known. We think the issue was clearly made that Burroughs made his calls for the east boundary of the Willson tract in 1851, under the influence of the calls in the original survey under which the land was granted, as nothing can be found on the ground locating Burroughs' east boundary line as called for by him. Furthermore, he attached a plat of the survey, as by him made, to the field notes, and this plat shows the Sabine river to be the east line.

Moreover, surveyors differed in their opinion as to where the Willson should be located on the ground. As before said, Burroughs, in 1851, in attempting to locate same, located it as shown by his field notes herein discussed, with the east line calling to run "up the river with its meanders as follows: North 720 varas, N. 7 E. 1,440 varas to the place of beginning." This would reach from the point B on the river to the point A on the river on the north, not following the meanders of the river, but in fact leaving the river. Hankla, a surveyor, also surveyed the Willson, as shown by the testimony of Toole. Toole testified:

"I had Mr. Hankla survey out the Willson 500-acre tract. He did not locate that old line I was talking about, west; he located it east; I think he put it over on the bend—in the far eastern part. There really is no corner there; it makes a bend. I wasn't with Mr. Hankla at the time. I don't remember if Mr. Jess Harper and Mr. Reg. Goodrich chained for him. I was trying to get my 1891 acres, and to go from the river west it fell a little short. As to whether Mr. Hankla tried to move the Willson 500-acre tract when my land fell short, well, he contended it ought to be over there in the bend, in the eastern part; that is what he contended. * * * I think Hankla himself found the old Willson tract and the bearing trees as they were located by Burroughs in 1851, but he said it wasn't in the right place, where the deed called for it."

The witness McGown testified that he surveyed the Willson 500-acre tract, using the Buroughs field notes, and that he did not find the line on the ground exactly as described in the field notes; that the east line would hit the river 427 varas too far east, would miss the beginning corner 427 varas. He says:

"From the point 'B' I didn't find anything; it was too far east. When it struck the river, it struck the river east of the northeast corner of the Moore. Running from that point on the river, I didn't find any line on that call."

[4] Under the well-recognized rules of construction, the calls for course and distance and quantity must yield to the call for the river, which sustains the jury's verdict.

2. The calls for the Willson tract by Bartram in his deed to Toole raise the issue that he did not recognize the location of the tract as made by the Burroughs field notes in 1851. While appellants offered abundant evidence to locate the beginning corner, the north boundary line, the northwest corner, the west line, the southwest corner, the south line, and the southeast corner of the Willson tract, as surveyed by Burroughs, there was no conclusive evidence that those under whom Bartram held ever recognized that location, and we construe Bartram's description to Toole as being an express repudiation of the Burroughs location, or as being made in ignorance thereof. Furthermore, while the Burroughs field notes call for the east line to run from a corner on the river (the point "B"), "thence up the river with its meanders as follows: North 720 varas N. 7 E. 1,440 varas to the place of beginning" (point A), the Weathersbys did not recognize the last call as correct, for in their deed to Cousins they called for the east line to run from the southeast corner on the river (point B), "thence up the river with its meanders to the place of beginning" (point A), following the call in the original field notes under which the land was titled. The north 720 varas and N. 7 E. 1,440 varas calls were not included, but they call for all the meanders of the river to the place of beginning. There is nothing to show that they ever recognized or acquiesced in the location of the east line as contended by appellants, but their deed to Cousins repudiates it.

R. L. Weathersby testified:

"I was the husband of Mrs. Sidney Ann Weathersby, now deceased. I only know the land as claimed by my wife on the John Moore league, in controversy in this suit, by hearsay and the field notes that I have seen. I have been on the ground, but not on the lines. I know the boundaries of it as given in the deed to Mrs. Weathersby; I have read the field notes.

"As the husband of Mrs. Weathersby, I had control and management of that estate for 25 years. I paid taxes on the land for my wife during that time, and asserted title to the land as described in the deed that conveyed the property to her. * * * Well, from what I have always understood and reading the field notes, I would take the east boundary line as being the river. From the corner of the south boundary line on the river I understood that it went from there back around the bend."

Thus, it is seen an issue was made that Burroughs erred in his location of the Willson tract, and that appellees have raised an issue in favor of its location in the extreme eastern end of Godkin's Bend, thereby making it to cover the 500 acres in Godkin's Bend not covered by the Toole deed to them. If we are correct in our construction of these facts, then the verdict of the jury fixing the river as the east boundary of the Willson tract is fully supported.

Apart from all that we have said above, appellees hold a title to all the land in controversy from and under the John Moore whose title was fully discussed by this court in the case of Toole v. Moore and Moore v. American Lumber Co., 203 S. W. 429. This title is in the record; and, in our judgment, as presented in this case, is sufficient to support the judgment of the court. Appellant requested no issue as to its validity, and all questions in relation thereto should be resolved by us in support of the judgment.

[5] Appellants' contention that the judgment should be reversed and the cause remanded because of the trial court's refusal to admit in evidence the field notes of the Willson 500-acre tract made by Burroughs in 1851 is overruled. Appellants say that these field notes were important evidence for the jury to consider on the issue of locating the east boundary of the Moore league, and locating the east line of the Willson. We think that the exclusion of said field notes, if error, was harmless, in view of the fact that the witness Barker testified fully as to the Burroughs field notes, especially on cross-examination. He testified that he had "run out" the Willson tract and that when doing so he was using the Burroughs field notes. He was fully questioned, and without objection fully testified as to the various lines, corners, and distances as called for in said field notes. In fact, all through the record reference is made to, and the field notes of the Burroughs survey are made to appear.

All of appellants' assignments have been carefully considered, and as none of them present reversible error, the judgment should be affirmed, and it is so ordered.

Affirmed.

WALKER, J., not sitting.